IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL BILLINGS,[1] | § | |
| | § | No. 400, 2023 |
| Respondent Below, | § | |
| Appellant, | § | Court Below–Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. 23-04-07TN |
| DEPARTMENT OF SERVICES | § | Petition No. 23-08512 |
| FOR CHILDREN, YOUTH AND | § | |
| THEIR FAMILIES (DSCYF), | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: April 3, 2024
Decided: June 4, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

After consideration of the no-merit brief and motion to withdraw filed by appellant's counsel under Supreme Court Rule 26.1(c), the appellee's response, the Child Attorney's response, and the Family Court record, it appears to the Court that:

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

(1)     By order dated October 23, 2023, the Family Court terminated the parental rights of the appellant, Michael Billings ("Father"), in his minor son (the "Child").[2] Father appeals.

(2)     On appeal, Father's counsel has filed an opening brief and motion to withdraw under Rule 26.1(c). Counsel asserts that she has conducted a conscientious review of the record and the relevant law and has determined that Father's appeal is wholly without merit. Counsel informed Father of the provisions of Rule 26.1(c), provided him with a copy of counsel's motion to withdraw and the accompanying brief, and advised him that he could submit in writing any additional points that he wished for the Court to consider. Father has not provided any points for the Court's consideration. The appellee, the Delaware Department of Services for Children, Youth and Their Families (DSCYF), and the Child's Attorney have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3)     In July 2022, following a home birth, the Child was taken to Christiana Hospital where he tested positive for fentanyl and cocaine. In August, the Child was transferred to Nemours Children's Hospital because of respiratory complications. In September, DSCYF petitioned for an *ex parte* custody order of the Child upon his

---

[2] The Family Court's order also terminated the parental rights of the Child's mother, who consented to the termination of her rights. We refer only to facts in the record that relate to Father's appeal.

release from the hospital because, among other things, the parents had not shown a meaningful interest in the Child's health or welfare, appeared to be homeless, and lacked financial support. With the filing of DFS's dependency-and-neglect petition, the mandated hearings ensued.[3]

(4) As of the September 21, 2022 preliminary protective hearing, Father was presumed to be the Child's biological father but paternity had not yet been confirmed. Father appeared to be homeless, had outstanding capiases, and had refused in-person meetings with DSCYF. The Family Court found probable cause existed to believe that the Child was dependent in Father's care and that it was in the Child's best interests that he remain in DSCYF's custody. The Family Court also found that DSCYF had made reasonable efforts to identify family members as placement resources. Indeed, DSCYF planned to place the Child with his paternal uncle following the hearing.

(5) As of the October 18, 2022 adjudicatory hearing, at which Father failed to appear, testing had confirmed that Father was the Child's biological father. The Child, who had been placed with Father's brother and sister-in-law following the preliminary protective hearing, was doing well in his placement. Since the preliminary protective hearing, Father had had two appropriate visits with the Child,

---

[3] When a child is removed from home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Pro. Rs. 212-219.

but he told DSCYF that his work schedule prevented him from attending additional visits. Although Father claimed to be employed, he had not provided DSCYF with proof of employment. The Family Court found that the Child remained dependent in Father's care and that it was in the Child's best interests that he remain in DSCYF's custody.

(6) In November 2022, the Family Court held a dispositional hearing to review the case plan that DSCYF had developed to facilitate Father's reunification with the Child. Father failed to appear at the hearing. The Family Court reviewed Father's plan, found it to be reasonable, and adopted it as an order of the court. Father's plan required him to: (i) obtain and maintain stable housing; (ii) complete a mental health evaluation and follow any recommended treatment; (iii) complete a substance abuse evaluation, follow any recommended treatment, and sign consent forms to permit DSCYF to monitor his progress; (iv) resolve his outstanding capiases; (v) provide proof of employment to DSCYF; and (vi) complete a parenting class.

(7) On February 7, 2023, the Family Court held a review hearing. As of the hearing, Father had scheduled a mental health evaluation as well as a substance abuse evaluation and was enrolled in parenting classes. However, Father was not visiting with the Child on a consistent basis, did not have stable housing, and had not provided proof of employment to DSCYF. The Family Court found that the

Child remained dependent in Father's care because the issues surrounding the dependency finding at the adjudicatory hearing had not yet been resolved. Mindful that the Child came into DSCYF's care as an infant, the Family Court advised Father that the dependency-and-neglect proceedings would move quickly and that he should bring evidence of any progress that he had made on his case plan to the next review hearing.

(8) On April 17, 2023, the Family Court held a second review hearing. Father failed to appear at the hearing. DSCYF reported that Father had completed a mental health evaluation and follow-up treatment had not been recommended. Father had also completed a substance abuse evaluation, but DSCYF suspected that Father had not been honest about his substance abuse issues during the evaluation, given his pending drug-related criminal charges. DSCYF had therefore advised Father that he needed to undergo a follow-up substance abuse evaluation to satisfy this component of his case plan. Father had the aforementioned pending criminal charges, had not been in contact with his attorney since the February review hearing, had not provided DSCYF with proof of employment, and was not consistently visiting with the Child. DSCYF did not have any updated information regarding Father's housing situation. At the conclusion of the hearing, the Family Court found that Father had made little progress on his case plan and that it was in the Child's best interests that he remain in DSCYF's custody. The Family Court also noted that

5

DSCYF had filed a motion to change the permanency plan from reunification to termination of parental rights for purposes of adoption and that the Child's Attorney supported the motion. The Family Court scheduled a permanency hearing for June 1, 2023.

(9) Having received no response from Father (or the Child's mother), the Family Court granted DSCYF's motion to change the permanency plan before the permanency hearing. On April 28, 2023, DSCYF filed a termination-of-parental-rights (TPR) petition on the basis of Father's failure to plan adequately for the Child's physical needs or mental and emotional health and development.

(10) As of the permanency hearing, at which Father failed to appear, DSCYF acknowledged that Father had completed the mental-health and parenting-class components of his case plan. However, Father: (i) continued to live with the Child's paternal grandmother, a housing situation that DSCYF deemed inappropriate because it was temporary; (ii) had not submitted to a follow-up substance abuse evaluation, (iii) had two sets of pending criminal charges, and (iv) had cancelled three of six visits with the Child since the last hearing. The Child continued to do well in his paternal uncle and aunt's home and had bonded with their biological daughter, who is the same age as the Child. The Family Court was able to contact Father by telephone and scheduled a time for him to meet with his attorney before the TPR hearing.

6

(11) At the September 22, 2023 TPR hearing, the Family Court heard testimony from Father, the Child's foster mom, the DSCYF treatment supervisor, and the court appointed special advocate coordinator. The evidence presented fairly established that Father had successfully completed the mental-health and parenting-class components of his case plan. However, the evidence also showed that Father had not completed the substance-abuse or stable-housing components of his case plan. Moreover, Father had only recently (two days before the TPR hearing) obtained employment and had not provided proof of his employment or income to DSCYF. Father also admitted that he had not visited with the Child since July 13, 2023, and had not made day care arrangements for the Child in the event that Father was permitted to take him home following the TPR hearing. During the course of his testimony, Father revealed that, unbeknownst to DSCYF, he had had his parental rights involuntarily terminated in another, older biological child who lives in South Carolina and had recently learned that he is the biological father of another child currently in DSCYF custody.

(12) Father's DSCYF treatment worker's supervisor opined that Father's visits with the Child had simply not been consistent enough for DSCYF to assess his ability to parent appropriately. Finally, the Child's foster mother testified that she and her husband were adoptive resources for the Child, who was thriving in their

home. Following the hearing, the Family Court issued a written order terminating Father's rights in the Child on the basis of his failure to plan. This appeal followed.

(13) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[4] We review legal rulings *de novo*.[5] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[6] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[7] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[8]

(14) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[9] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[10] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition.[11] If the Family Court

---

[4] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

[5] *Id.* at 440.

[6] *Id.*

[7] *Id.*

[8] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[9] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[10] *Id.* at 537.

[11] 13 *Del. C.* § 1103(a)(5)(a)(1)-(5) (listing additional conditions).

finds a statutory basis for termination of parental rights, the court must then determine whether, under 13 *Del. C.* § 722, severing parental rights is in the best interests of the child.[12] Both of these requirements must be established by clear and convincing evidence.[13]

(15) Here, the Family Court found that DSCYF had proved, by clear and convincing evidence, that the termination of Father's parental rights was appropriate based on his failure to plan adequately for the Child's physical needs or mental and emotional health and development[14] and that the Child, who came into DSCYF's care as an infant, had been in DSCYF custody for more than six months.[15] The Family Court then examined the best-interests factors set out in 13 *Del. C.* § 722 and found, by clear and convincing evidence, that termination of Father's parental rights was in the Child's best interests.

---

[12] *Shepherd*, 752 A.2d at 536-37.

[13] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

[14] 13 *Del. C.* § 1103(a)(5).

[15] *Id.* § 1103(a)(5)(a)(1). The Family Court also cited Father's involuntary TPR involving his older son in South Carolina and DSCYF's involvement with his other child in Delaware as an additional statutory condition. *See id.* § 1103(a)(5)(a)(2). Because it appears that DSCYF did not know of either of these proceedings when it filed the TPR petition, we affirm the Family Court's decision on the ground that DSCYF established by clear and convincing evidence the additional statutory condition that the Child came into care as an infant and had been in DSCYF custody for six months at the time of the TPR hearing.

(16)  Father has not submitted any points for this Court's consideration on appeal.  Appointed counsel represents that she has determined that no arguably appealable issue exists but also states that if "required to make an argument," she would argue that the evidence supported a finding that Father had completed the housing, employment, and substance-abuse components of his case plan.[16]  But Father testified that: (i) he was aware that DSCYF did not consider his current housing situation stable or appropriate; (ii) he had not scheduled, much less completed, a follow up substance-abuse evaluation; and (iii) he had not provided proof of his employment or income to DSCYF.  We therefore find no merit to counsel's hypothetical argument.

(17)  Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts.  We therefore conclude that Father's appeal is wholly without merit and devoid of any arguably appealable issue.  We are satisfied that Father's counsel made a conscientious effort to examine the record and the law and properly determined that Father could not raise a meritorious claim in this appeal.

---

[16] Opening Br. at 17.  But once counsel has made a conscientious examination of the record and the law and concluded that the appeal is wholly without merit, she should not pose hypothetical arguments that she has already determined to be without merit.  Rather, counsel should refer to any facts, evidence, or significant pretrial and trial applications and rulings that may support the appeal and provide the appellant's points, if any. Del. Supr. Ct. Rule 26.1(c)(i).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be AFFIRMED.  Counsel's motion to withdraw is moot.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice